**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE:** <br> **FRANCES SCARBOROUGH,** <br><br> **Debtor(s).** | : | **Chapter 13** <br><br><br> **Bky. No. 01-35194ELF** |
| **FRANCES SCARBOROUGH,** <br><br> **Plaintiff(s),** <br><br> **v.** <br><br> **CHASE HOME FINANCE, LLC,** <br><br> **Defendant(s),** | : | **Adv. No. 08-00058ELF** |

# M E M O R A N D U M

## I.

Plaintiff-Debtor Frances Scarborough ("the Debtor") commenced the above adversary proceeding ("the AP") by filing a Complaint on March 18, 2008. This court dismissed the adversary proceeding by order dated September 9, 2008. Following the Debtor's appeal, the District Court remanded the adversary proceeding to this court with instructions to conduct further proceedings in conformity with its accompanying Memorandum.

On March 24, 2009, I conducted a status hearing to permit the parties to present their views regarding the proper course of further proceedings in this court following the remand. At the status hearing, the Debtor urged the court to follow "the mandate rule" (i.e., that an appellate court's order is binding on a lower court) and strictly follow the District Court's remand instructions. For reasons that will be apparent after the procedural history is set out

below, Defendant Chase Home Finance, LLC ("Chase")[1] contended that the court should not do so.

After careful consideration, I conclude that a narrow exception to the mandate rule applies. As explained below, this court lacks jurisdiction to follow the District Court's remand instructions due to a pending Third Circuit appeal. Also, following those instructions would create an irremediable conflict with an Order entered by a different District Court judge.

In the circumstances presented, I conclude that the appropriate course of action is to dismiss the adversary proceeding again. Dismissal will likely result in another appeal to the District Court, which will provide the District Court with the another opportunity to determine the appropriate disposition of this matter.

**II.**

**A.**

The Debtor commenced the bankruptcy case ("the Main Case") in which the AP arose on October 31, 2001. The bankruptcy court has dismissed the Main Case on two (2) separate occasions. The first order dismissing the Main Case, dated July 21, 2005,[2] was vacated on appeal

---

[1] In earlier proceedings in this bankruptcy case, Chase was identified as Chase Manhattan Mortgage Corp. There does not appear to be any issue that the proper party has been before the court at all times during the long history of this bankruptcy case and the related adversary proceedings. For ease of reference, I will refer to the mortgagee as "Chase" throughout this Memorandum.

[2] See Bky. No. 01-35194-ELF (Docket Entry No. 228). Prior to February 14, 2006, the Hon. Kevin J. Carey presided over this bankruptcy case and all related adversary proceedings. Subsequent to that date, this case and related adversary proceedings have been on the docket of the undersigned bankruptcy judge.

by the District Court by order dated April 12, 2007, entered by the Hon. Ronald J. Buckwalter.[3] Following remand and further proceedings in this court, this court dismissed the Main Case a second time by order dated September 5, 2007 ("the Second Dismissal Order").[4] The Debtor appealed the Second Dismissal Order to the District Court.[5]

Like the appeal of the first order dismissing the Main Case, the appeal of the Second Dismissal Order was also assigned to Judge Buckwalter's docket. The District Court disposed of the appeal by "closing" the case by order dated September 10, 2008.[6] As a practical matter, the District Court's order functioned as a dismissal of the appeal. The Debtor appealed the District Court's order to the Court of Appeals on November 7, 2008, where the appeal is presently pending.[7]

Thus, this court's Second Dismissal Order (of the Main Case) has not been disturbed and remains in force, subject to review by the Court of Appeals. There is presently no pending "main" bankruptcy case.[8]

---

3 See No. 2:05-CV-4548-RB (E.D. Pa.) (Docket Entry No.16).

4 See Bky. No. 01-35194 (Docket Entry No. 283).

5 See Bky. No. 01-35194 (Docket Entry No. 292).

6 See No. 2:07-CV-04236-RB (E.D. Pa.) (Docket Entry No. 12).

7 See No. 08-4532 (3d Cir.).

8 I note further that as of September 5, 2007, the Debtor had filed a total of five (5) chapter 13 bankruptcy cases: in 1992, 1994, 1998, 2001 and 2004. In the fifteen (15) years between October 1992 and September 2007, the Debtor was under the protection of the bankruptcy court for at least one-hundred-thirty-five (135) months or more than eleven (11) years.

**B.**

Meanwhile, on March 18, 2008, after the entry of the Second Dismissal Order and during the pendency of the Debtor's appeal of that Order in the District Court, the Debtor filed the Complaint that initiated the AP. In the AP, the Debtor asserts that Chase violated the automatic stay, 11 U.S.C. §362(a), by prosecuting a pending state court mortgage foreclosure lawsuit during the time period between the first dismissal of the bankruptcy case on July 21, 2005 and its reinstatement by the District Court on April 12, 2007 ("the Gap Period"). In the Complaint, the Debtor requested, inter alia, that the bankruptcy court enjoin Chase's ongoing foreclosure proceedings against the Debtor's residence as a remedy for the asserted violation of the automatic stay.[9]

This court rejected the Debtor's legal theory and granted Chase's Motion to Dismiss the

---

After the dismissal of the Main Case in September 2007, the Debtor filed two (2) additional bankruptcy cases, one on September 10, 2007 (the day after the dismissal of the Main Case), see Bky. No. 07-15269-ELF, and another on July 1, 2008, see Bky. No. 08-14284-ELF. The 2007 case was dismissed on Chase's motion by order dated November 27, 2007 and a bar was imposed to prevent the Debtor from making further bankruptcy filings without leave of court for a period of one hundred eighty (180) days. See Bky. No. 07-15269-ELF (Docket Entry No. 49). The 2008 case was dismissed at the Debtor's request by order dated August 26, 2008. That dismissal order also granted Chase's request that the Debtor be prohibited from filing another bankruptcy without prior leave of this court. See Bky. No. 08-14284-ELF (Docket Entry No. 39).

For: (1) a summary of the Debtor's bankruptcy filings from October 13, 1992 through September 5, 2007; (2) a more detailed procedural history of the Main Case; and (3) a recapitulation of the reasons why the Main Case was dismissed on September 5, 2007, see In re Scarborough, 2007 WL 3165544, at *1-2 (Bankr. E.D. Pa. Oct. 25, 2007) (Memorandum issued in Bky. No. 07-15269-ELF to accompany Order denying the Debtor's request for an extension of the automatic stay under 11 U.S.C. §362(c)(3)).

[9] See Adv. No. 08-00058-ELF, Complaint ¶3.

AP by order dated September 9, 2008 ("the AP Dismissal Order").[10] On the merits, this court concluded as a matter of law, that the actions taken by Chase during the Gap Period did not violate the automatic stay.[11]

The Debtor appealed the AP Dismissal Order to the District Court. That appeal was not assigned to Judge Buckwalter, the judge handling the appeal of the Second Dismissal Order. Rather, the appeal of the AP Dismissal Order was assigned the Hon. John P. Fullam.[12]

Presently, the AP is again before the bankruptcy court following a remand from the District Court, acting through Judge Fullam, issued by order dated January 22, 2009.[13]

---

[10] See Adv. No. 08-00058 (Docket Entry No. 17).

[11] The entry of the September 9, 2008 Order was preceded by an unpublished oral bench opinion. The reasoning for this court's decision to dismiss the AP is similar to that expressed recently in In re Gargani, 398 B.R. 839 (Bankr. W.D. Pa. 2009).

[12] See No. 2:08–CV-04873-JF (E.D. Pa.).

[13] Id. (Docket Entry No. 10).

For the sake of completeness, I note that on March 18, 2008, the same day that the Debtor initiated this adversary proceeding, she filed a Motion for Preliminary Injunction Pending Appeal in the Main Case (not the AP), see Bky. No. 01-35194 (Docket Entry No. 304), requesting that the court enjoin a sheriff's sale of the Debtor's residence, then scheduled for April 1, 2009. I denied that motion by order dated March 20, 2009, accompanied by an eleven (11) page Memorandum that provides a fairly comprehensive summary of the history of these proceedings. See id. (Docket Entry No. 305).

On March 24, 2008, the Debtor then filed a motion requesting that the District Court issue a preliminary injunction. The Debtor's Motion in the District Court was docketed in No. 07-CV-4236 (i.e., the same docket of the appeal of the Second Dismissal Order before Judge Buckwalter). See No. 07-CV-4236 (Docket Entry No. 7). The District Court denied the motion for preliminary injunction on April 4, 2008. See id. (Docket Entry No. 10). By Order dated October 10, 2008, the District Court "closed" the case, in effect dismissing the Debtor's appeal of this court's Second Dismissal Order. See id. (Docket Entry No. 13). As stated earlier in the text, the Debtor appealed the October 10, 2008 order to the Court of Appeals. See id. (Docket Entry No. 15).

**C.**

In its remand order, the District Court instructed the bankruptcy court to conduct further proceedings in conformity with its accompanying Memorandum. In the Memorandum, the District Court determined that the subject matter of the appeal was both "the dismissal of the adversary proceeding, and . . . the ultimate dismissal of the bankruptcy itself." In re Scarborough, 2009 WL 159240, at *1 (E.D. Pa. Jan. 22, 2009) (emphasis added). The District Court then concluded that "on the present state of the record, there is a valid pending Chapter 13 proceeding, and the automatic stay is in effect" and it was "unnecessary to reach a firm conclusion as to whether reinstatement of the bankruptcy proceeding rendered void any actions taken by the creditor to enforce its claim." Id. The District Court remanded the case "for the purpose of (1) holding a hearing to establish the secured amount of Chase's claim; (2) enabling the debtor to propose a feasible plan, if possible; and (3) establishing a reasonable time-frame for the further conduct and ultimate resolution of this bankruptcy proceeding." Id. at *2.

In issuing the remand order, the District Court's must have assumed either that the Main Case was still pending in this court or that the dismissal of the Main Case was the subject of the appeal.[14] Either way, without making a finding that the dismissal of the Main Case was

---

[14] It is perhaps understandable that the District Court may have assumed that the main bankruptcy case was still pending in the bankruptcy court. Usually, adversary proceedings are filed in the bankruptcy court only when there is a pending bankruptcy "case." Absent some impact on a pending bankruptcy case, the bankruptcy court likely would lack subject matter jurisdiction over the adversary proceeding. See, e.g., Pacor v. Higgins, 743 F.2d 984 (3d Cir. 1984); In re Shuman, 277 B.R. 638, 645-48 (Bankr. E.D. Pa. 2001).

The AP involved here, however, is a claim for violation of the automatic stay. Such a claim is expressly authorized by the Bankruptcy Code, see 11 U.S.C. §362(k), and is a cause of action that "arises under" the Bankruptcy Code. As such, there is authority to suggest that the bankruptcy court has subject matter jurisdiction over that sort of claim regardless whether the main bankruptcy "case" is still pending. See generally Bank United v. Manley, 273 B.R. 229, 243 (N.D. Ala. 2001) ("case law

erroneous, tthe District Court's clearly directed this court to conduct further proceedings in the dismissed Main Case.

The parties disagree as to what should happen next. The Debtor contends that the court should conduct a hearing precisely as instructed by the District Court and determine whether, in the dismissed 2001 chapter 13 bankruptcy case, the Debtor can propose a feasible and confirmable chapter 13 plan with a prospective term of up to five (5) years. See generally 11 U.S.C. §1322(d) (maximum term of a chapter 13 plan is five (5) years).[15] Conversely, Chase asserts that no hearing is necessary and that the court should again enter an order dismissing the adversary proceeding.

### III.

"It is axiomatic that on remand for further proceedings after decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal." Bankers Trust Co. v. Bethlehem Steel Corp., 761 F.2d 943, 949 (3d Cir. 1985); accord CGB Occupational Therapy, Inc. v. RHA Health Serv., Inc., 499 F.3d 184, 197 (3d Cir. 2007); Laborers' Int'l Union of N. Am. v. Foster Wheeler Energy Corp., 26 F.3d 375, 397

---

clearly holds that a proceeding invoking a substantive right under the Bankruptcy Code falls within the bankruptcy courts 'arising under' . . . jurisdiction"). Here, I invoked this principle and exercised subject matter jurisdiction over the AP. Given the absence of a written opinion making explicit the basis for my exercise of jurisdiction, the District Court may have assumed that jurisdiction was based on the pendency of the Debtor's main bankruptcy case. Of course, this does not explain why the District Court stated that the dismissal of the Main Case was within the subject matter of the appeal. The only subject of the appeal was the AP Dismissal Order.

[15] Under the Debtor's theory, she would have until some time in year 2014 to complete performance of her chapter 13 plan in a bankruptcy case commenced in 2001.

(3d Cir. 1994). This axiom is referred to as "the mandate rule." In following the mandate rule, the trial court "must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." Bankers Trust Co., 761 F.2d at 949.

There are several exceptions to the mandate rule. As one court has observed:

> [t]he command given by the mandate rule seems clear: follow the mandate. Nevertheless, some courts . . . have recognized a few exceptions which might allow a matter to be revisited. They are (1) the availability of new evidence, (2) an intervening change of controlling law, or (3) the need to correct a clear error or prevent manifest injustice.

Ute Indian Tribe v. State , 935 F. Supp. 1473, 1519 (D. Utah 1996) (quoting Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coop., Inc., 896 F.Supp. 912, 914 (E.D. Ark. 1995) (internal quotations omitted)); accord In re Progressive Farmers Ass'n, 829 F.2d 651, 655 (8th Cir. 1987); Leggett v. Badger, 798 F.2d 1387, 1389 (11th Cir. 1986). These exceptions to the mandate rule should be read and applied "narrowly." Leggett, 798 F.2d at 1389 n.2.

In this case, the only potential exception to the mandate rule is the third exception quoted above: the need to correct a clear error or prevent manifest injustice. This is perhaps the narrowest of the three (3) exceptions to the mandate rule.

> This exception is rarely invoked. Courts are much more inclined to describe the manifest injustice standard than to invoke it. In any event, when invoked it usually is in the context of an appellate court hearing a matter for the second (or third) time on appeal . . . or a criminal case that has been remanded from an appellate court . . . .

Federated Rural Elec., 896 F.Supp. at 915 (quoting Charles A. Wright, et al., 18 Federal Rules and Practice § 4478, at 791 (1981)) (other citations and internal quotations omitted).

Further, as the 11th Circuit Court of Appeals has stated, "[a trial] court should follow the

law of the case as decided by the appellate court unless the court is certain that one of the three specifically and unquestionably applies." Legget, 798 F.2d at 1389 n.2 (emphasis added); accord Ute Indian Tribe, 935 F.Supp. at 1520 n.68.

**IV.**

In the circumstances presented, I conclude that the third exception to the mandate rule applies because: (1) there is a clear error and (2) this court lacks jurisdiction to carry out the District Court's instructions.[16]

The District Court's decision seems based on the erroneous premise that the dismissal of "the bankruptcy itself" (i.e., the Main Case) was the subject of the appeal of the order dismissing the AP. As a result, the District Court issued remand instructions relating to the administration of the Main Case, rather than the propriety of the AP Dismissal Order, which was based on this this court's ruling that, as a matter of law, Chase did not violate the automatic stay.

In fact, the Debtor's appeal of this court's September 2007 order dismissing the Main Case was not before the District Court as a part of the Debtor's appeal of the September 2008 order dismissing the AP. The Second Dismissal Order was entered by the bankruptcy court approximately six (6) months before the AP was even commenced in the bankruptcy court. The

---

[16] While it might not provide an independent basis for invoking the third exception to the mandate rule absent the error and lack of jurisdiction discussed in the text, I note also that compliance with the mandate would inflict a manifest injustice as to Chase. The remand order instructs this court to conduct further proceedings in a (dismissed) chapter 13 case that was filed more than seven (7) years ago. The Debtor was substantially delinquent on the mortgage when the case commenced and it is undisputed that, in the past seven (7) years, the Debtor's delinquency has only increased. In these circumstances, it is manifestly unjust to subject Chase to a new round of hearings to determine if the Debtor can propose and obtain confirmation of a chapter 13 plan.

appeal of the Second Dismissal Order was assigned to Judge Buckwalter and he effectively dismissed that appeal by his order dated October 9, 2008 "closing" the case. The Debtor's appeal of Judge Buckwalter's October 9, 2008 order was already pending in the Court of Appeals by the time Judge Fullam issued the AP remand order in January 2009.

These indisputable historical facts, verifiable from the dockets of the bankruptcy court, District Court and Third Circuit Court of Appeals, demonstrate that the dismissal of the Main Case could not have been the subject of the appeal before Judge Fullam. The only subject of the appeal before Judge Fullam was the dismissal of the AP, not the dismissal of the entire bankruptcy "case." Therefore, the District Court lacked authority to vacate, reverse or otherwise modify the Second Dismissal Order through its January 22, 2009 order.[17]

With the Debtor's appeal of the Second Dismissal Order pending in the Court of Appeals, there is no existing bankruptcy case in this court. Unless and until the Main Case is reinstated by the Court of Appeals, the bankruptcy court lacks jurisdiction to confirm a chapter 13 plan, as there is no case pending in this court in which to confirm a plan. Indeed, the very pendency of the appeal of the Second Dismissal Order deprives this court of jurisdiction to further administer the Main Case. See generally Venen v. Sweet, 758 F.2d 117, 120 (3d Cir. 1985) (timely filing of

---

[17] If the Main Case had still been pending in this court and if, believing that issues relating to the main case were somehow implicated by the AP Dismissal Order, and if, in remanding the AP, the District Court had issued instructions regarding administration of the Main Case, I would likely conclude this court must follow the District Court's remand instructions regarding the administration of the Main Case. That outcome probably would be proper based on: (1) the appropriate level of deference this court should afford to the District Court's remand order under the mandate rule and (2) the District Court's overriding authority in bankruptcy cases, see 28 U.S.C. §157(d) (district court may withdraw any case or proceeding that has been referred to the bankruptcy court). However, here, the Main Case was dismissed, the propriety of that dismissal is pending before the Third Circuit Court of Appeal and was not within the scope of the appeal from the AP Dismissal Order.

a notice of appeal confers jurisdiction on the appellate court and divests the lower court of its control over those aspects of the case involved in the appeal); In re Prudential Lines, Inc., 170 B.R. 222, 243 (S.D.N.Y. 1994) (a lower court may take no action which interferes with the appeal process or with the jurisdiction of the appellate court), appeal dismissed, 59 F.3d 327 (2d Cir. 1995).

The remand order also creates an impossible conflict for the bankruptcy court. This court's strict compliance with the mandate would elevate Judge Fullam's decision over Judge Buckwalter's decision and perhaps over the future decision of the Court of Appeals. This seems inappropriate, particularly where the record demonstrates that the propriety of the dismissal of the Main Case (i.e., the Second Dismissal Order) was not the subject matter of the appeal before Judge Fullam, butwas the precise subject matter of the appeal before Judge Buckwalter.

For these reasons, I conclude that the best course is to decline to follow the mandate of the District Court in remanding the AP to this court and, instead enter another order dismissing the AP. If the Debtor appeals this order, I anticipate that, with the procedural posture clarified, the District Court will address the proper subject matter of the appeal – the merits of my determination that, as a matter of law, Chase did not violate the automatic stay by its conduct during the Gap Period – and will not issue remand instructions relating to the Main Case.[18]

---

[18] In the event that this order is appealed and in the event that the District Court reaffirms its stance and remands the AP to this court with the same instructions as before, I will follow that

An order consistent with this Memorandum follows.

**Date: April 8, 2009**

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**

---

mandate. In other words, I fully appreciate the judicial hierarchy and the obligation of the bankruptcy court to follow the chain of command. This decision, invoking an exception to the mandate rule, is based on my judgment that the District Court was laboring under a misconception as to the procedural history in this matter when it issued the remand order and that once apprised of the correct scope of the appeal, it will come to a different conclusion regarding the disposition of the appeal. If that judgment proves incorrect, the District Court decision will govern this court, absent modification by a higher, appellate court.